<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| TELMARK PACKAGING CORPORATION, INC., | : : : : | |
| Plaintiff, | : : | Civ. No. 05-3049 (GEB) |
| v. | : : | |
| NUTRO LABORATORIES AND NATURE'S BOUNTY, | : : : | **MEMORANDUM OPINION** |
| Defendant. | : : : | |

<u>**BROWN, Chief Judge**</u>

This matter comes before the Court upon the Motion for Summary Judgment of Defendant NBTY Manufacturing, LLC[1] (hereinafter "NBTY" or "Defendant") on all Counts of the Plaintiff's Complaint, and the Cross-Motion for Summary Judgment of Plaintiff Telmark Packaging Corporation, Inc. (hereinafter "Telmark" or "Plaintiff") on all Counts of the Plaintiff's Complaint.  The Court has decided these motions without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons set for below, the Court will grant in part and deny in part both motions.

**I.      BACKGROUND**

---

[1]   Defendant asserts that although Telmark mistakenly refers to Defendant as Nutro Laboratories and Nature's Bounty in its complaint,  Nutro Laboratories and Nature's Bounty was acquired and incorporated as NBTY Manufacturing, LLC under Delaware law with its principal place of business in New York.  (Def.'s Notice of Removal ¶ 4).  Telmark does not dispute this contention, which does not impact on the actions pending.

1

Telmark is a small business whose specialty is to act as a broker or liaison between contract manufacturing companies, and contract packaging companies. (Pl.'s LOC. R. 56.1 ¶ 2; Def.'s LOC. R. 56.1 ¶ 2.) In early 1998, Telmark began working with Hartz Mountain Corp. ("Hartz") to develop a line of dietary supplements (the "product") for pets. (Compl. ¶ 5.) Telmark consulted with Hartz regarding the design of various packaging and marketing materials for the product. (Compl. ¶¶ 5,7,8.) After six months of development, Telmark sought a third party to manufacture the product for sale to Hartz. (Compl. ¶ 8.) Telmark determined that NBTY, whose primary business was manufacturing vitamin supplements for both humans and pets, possessed the necessary manufacturing capabilities. (Pl.'s LOC. R. 56.1 ¶ 6; Def.'s LOC. R. 56.1 ¶ 6.)

Accordingly, on June 22, 1998, Telmark and NBTY signed a Contract (the "Contract" or "Agreement") to jointly produce the product and sell it to Hartz. (Decl. of Sean F. Byrnes, Ex. A ("Contract").) Telmark agreed to serve as NBTY's exclusive sales representative at Hartz, to provide NBTY with packaging materials, and to set the final price for the product. (Decl. of Sean F. Byrnes, Ex. A ("Contract") p. 2.) NBTY agreed to manufacture the product based upon the orders placed by Hartz, and to pay Telmark a commission calculated according to a formula within the Contract. (*Id.* at 2-3.) The Contract was for a period of one year, but renewed automatically for additional one year terms unless either party terminated the Agreement. (*Id.* at 1-2.) In the spring of 2004, NBTY notified Telmark that it would not renew the Contract, and the Contract terminated on June 22, 2004. (Pl.'s LOC. R. 56.1 ¶ 22; Def.'s LOC. R. 56.1 ¶ 22.)

Telmark alleges that, prior to the Contract's termination, NBTY communicated directly with Hartz regarding pricing, and also disclosed confidential information regarding Telmark's

suppliers and pricing structure. Telmark claims that these actions breached both the express terms of the Contract, and the implied covenant of good faith and fair dealing. (Compl. Counts I and II.) Telmark further asserts that NBTY's conduct breached an oral promise made by an NBTY employee before the Contract was signed. (Compl. Count IV.) Finally, the Plaintiff levies several tort claims against NBTY, including tortuous interference with an economic opportunity, misappropriation of Telmark's trade secrets, and unfair competition. (Compl. Counts III, V and VI.) NBTY denies all of the Plaintiff's allegations. (Answer) Each party moves for summary judgement on all claims.

## II.   DISCUSSION[2]

### A.   STANDARD

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hersh v. Allen Prod. Co.*, 789 F.2d 230, 232 (3d Cir. 1986). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor). In deciding whether triable issues of fact exist, the court must view the underlying facts and draw all reasonable inferences in favor of the

---

[2]   Section 11 of the Agreement provides that, "this Agreement shall be governed by, and construed and enforced in accordance with, the laws of the state of New Jersey . . . ." (Decl. of Sean F. Byrnes, Ex. A ("Contract") p. 5.) Accordingly, the Court will apply the law of the State of New Jersey in deciding the parties' motions.

non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995); *Hancock Indus. v. Schaeffer*, 811 F.2d 225, 231 (3d Cir. 1987).

### B. Count I

Telmark alleges that NBTY breached the express terms of the Contract when it provided pricing information directly to Hartz without Telmark's approval. (Compl. Count I.) The contractual clause at issue is the following:

> 4. <u>Prices, Terms and Conditions of Sales</u>
>
> Telmark will establish all pricing at Hartz Mountain for Nutro's products and services, based on written quotations (hereinafter referred to as the "Quoted Cost") provided by Nutro to Telmark. Nutro shall not provide any pricing directly to Hartz Mountain without written authorization from Telmark. Notwithstanding the foregoing, all prices, orders and sales, and the terms and conditions thereof, shall be subject to Nutro's prior approval.

(Decl. of Sean F. Byrnes, Ex. A ("Contract") pp. 1-2.) To support its claim that this clause was breached, Telmark points to e-mail correspondence between Darren Schneider, the NBTY official in charge of the Hartz/Telmark account, and Matthew Buckley, the corresponding official at Hartz responsible for the Telmark/NBTY account. In an e-mail message sent on April 23, 2004, Schneider (NBTY) wrote to Buckley (Hartz):

> Hi Matt . . . . Here are the new prices that will be in effect starting on the date of the contract termination
>
> Small Cat $1.68
> Small Dog $1.68
> Large Dog $2.49
>
> Based on last years units. You have just negotiated a $65,000 savings to the bottom line . . .

4

(Decl. of Sean F. Byrnes, Ex. M ("Schneider E-mail 4/23/04").)  Telmark argues that the content of this e-mail represents pricing information, and, therefore, constitutes a breach of contract.  The Court agrees.  The Contract plainly states that, "Nutro shall not provide any pricing directly to Hartz Mountain without written authorization from Telmark."  (Decl. of Sean F. Byrnes, Ex. A ("Contract") pp. 1-2.)   NBTY does not dispute that Telmark did not authorize this communication.  Therefore, NBTY provided pricing information to Hartz in direct contravention of the Contract's express terms.  With this action, NBTY breached its Contract with Telmark.  There is no genuine issue of material fact as to NBTY's breach of contract.  Based upon the materials before the Court, however, there remains a material issue of fact as to the damages arising from NBTY's breach of contract.  Because the resolution of material issues of fact is the proper role of a jury, the Court will deny summary judgment to both parties on the issue of damages arising from NBTY's breach of contract.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

      For the foregoing reasons, the Court will grant summary judgment to the Plaintiff on the element of breach, but will deny summary judgment to both parties on the issue of damages arising from that breach of contract.

      **C.**    **Count II**

      Telmark alleges that NBTY's discussion of pricing and alleged disclosure of confidential information to Hartz prior to the Contract's termination violated the covenant of good faith and

fair dealing that is implied in all contracts under New Jersey law.³ (Compl. Count II.) By contrast, NBTY argues that an express clause that allows either party to unilaterally terminate the Contract without cause cannot be defeated by a breach of the implied covenant of good faith and fair dealing. Because NBTY terminated its Contract with Telmark pursuant to such an express termination clause, NBTY believes Telmark's claim must fail.

The courts of the state of New Jersey have consistently held that "[e]very party to a contract . . . is bound by a duty of good faith and fair dealing in both the performance and enforcement of a contract." *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 182 N.J. 210, 224 (2005), *citing Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 241, 244 (2001) (holding that "[a] covenant of good faith and fair dealing is implied in every contract . . ."); *see also Sons of Thunder v. Borden, Inc.*, 148 N.J. 396, 420 (1997) ("[E]very contract in New Jersey contains an implied covenant of good faith and fair dealing"); RESTATEMENT (SECOND) of CONTRACTS § 205 (1981) ("Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."). "The party claiming a breach of the covenant of good faith and fair dealing must provide evidence sufficient to support a conclusion that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties." *Brunswick Hills*, 182 N.J. at 225 (quotations omitted), *quoting* 23 WILLISTON ON CONTRACTS § 63.22 at 513-14 (LORD ed. 2002). "As a general rule, subterfuges and evasions in the performance of a contract violate the covenant of

---

³ Under New Jersey law Telmark may claim that NBTY breached both the express terms of their Contract and the implied covenant of good faith and fair dealing. *See Sons of Thunder v. Borden, Inc.*, 148 N.J. 396, 420 (1997) (allowing the pursuit of both claims in a single action).

good faith and fair dealing even though the actor believes his conduct to be justified." *Brunswick Hills*, 182 N.J. at 225 (quotations omitted), *quoting* RESTATEMENT (SECOND) of CONTRACTS § 205 cmt. d (1981). Furthermore, "a party to a contract may breach the implied covenant of good faith and fair dealing in performing its obligations even when it exercises an express and unconditional right to terminate." *Sons of Thunder*, 148 N.J. at 422.

Applying these standards, the materials before this Court, specifically the e-mail correspondence between NBTY and Hartz prior to the Contract's termination, create an issue of material fact as to whether NBTY's conduct denied Telmark the full benefits of the Contract. (Decl. of Sean F. Byrnes, Ex. M.) NBTY's assertion that, under New Jersey law, a violation of the implied covenant of good faith and fair dealing cannot defeat an express termination clause of the type contained in this Contract, is irrelevant. Telmark does not challenge NBTY's right to terminate the Contract, but rather asserts that NBTY's conduct while the Contract was in effect breached the implied covenant of good faith and fair dealing. Because there is a material issue of fact regarding Telmark's claim that NBTY breached the covenant of good faith and fair dealing, judgment as a matter of law is inappropriate. As noted, resolution of material issues of fact is the proper role of a jury. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

For the foregoing reasons, summary judgment is denied to both parties on the claim that NBTY breached its covenant of good faith and fair dealing with Telmark.

**D.    Count III**

Telmark claims that NBTY's discussion of pricing and alleged disclosure of confidential information to Hartz prior to the Contract's termination amounts to tortious interference with

7

Telmark's prospective economic relationship with Hartz.[4]  (Compl. Count III.)  Under New Jersey law, "it is 'fundamental' to a cause of action for tortious interference with a prospective economic relationship that the claim be directed against defendants who are not parties to the relationship."  *Printing Mart-Morristown v. Sharp Electronics Corp.*, 116 N.J. 739, 752 (1989) (citation omitted).

Applying this principle here, Telmark's claim fails.  The only contract in this tripartite relationship was between Telmark and NBTY.  According to the terms of that Contract, Telmark and NBTY worked in tandem to meet Hartz's needs.  Without Telmark, there would be no orders for the product from Hartz, and without NBTY, Hartz's orders would not be met.  Thus, a failure by either Telmark or NBTY to perform its contractual duties would be fatal to their mutual enterprise.  As such, NBTY was a party to the relationship between Hartz and Telmark.  In New Jersey, a claim of intentional interference with a prospective economic relationship may not be brought against a defendant who was party to that relationship.  *Id.*  Therefore, Telmark cannot maintain this claim against NBTY.

For the foregoing reasons, summary judgment is granted to NBTY on Telmark's claim of intentional interference with a prospective economic relationship.

### E. Count IV

Telmark claims that, prior to signing the Agreement, agents of NBTY made an oral promise that NBTY would not strike separate deals with Hartz.  (Compl. Count IV.)  Telmark

---

[4] Telmark is pursuing a claim of "tortious interference with economic opportunities" against the NBTY.  (P's. Op. Br. at 34)  This is a pseudonym for the intentional tort of "interference with a prospective economic relationship" under New Jersey law.  *See Printing Mart-Morristown v. Sharp Electronics Corp.*, 116 N.J. 739, 744 (1989).

claims that NBTY's termination of the Contract and subsequent dealings with Hartz breached this oral promise.[5] This claim must fail because the Agreement contains the following integration clause:

> 13. <u>Entire Agreement</u>
>
> This Agreement supercedes all prior understandings and agreements between the parties, and constitutes the entire agreement between the parties. This Agreement may not be changed or terminated orally, but only in writing and signed by both parties.

(Decl. of Sean F. Byrnes, Ex. A ("Contract") p. 5.) Telmark's claim is based upon statements made prior to the Agreement. Therefore, this clause in the Contract precludes Telmark from basing a claim upon those statements.

For the foregoing reasons, summary judgment is granted to NBTY on Telmark's breach of an oral promise claim.

**F.   Count V**

Telmark alleges that NBTY's conduct amounts to a misappropriation of trade secrets under New Jersey law. (Compl. Count V.) Specifically, Telmark claims that NBTY used its knowledge of Telmark's pricing structure and suppliers to undercut Telmark and strike an independent deal with Hartz. NBTY contends that, as a matter of law, Telmark cannot establish the cornerstones necessary to support this claim.

*Rycolene Products, Inc. v. Walsh*, 334 N.J. Super 62, 71 (App. Div. 2000) announced the

---

[5] Plaintiff cites New Jersey's parol evidence rule as stated in *Atl. Ne. Airlines v. Schwimmer*, 12 N.J. 293 (1953) and its progeny to support this claim. (Pl.'s Reply to Def.'s Opp'n at 6-8) This reference is inappropriate as this claim does not involve the interpretation of any clause in the Agreement, but rather alleges oral promises made apart from the Agreement.

following:

> To prevail in New Jersey upon a claim for misappropriation of a trade secret, a trade secret owner must establish that: (1) a trade secret exists; (2) the information comprising the trade secret was communicated in confidence by plaintiff to the employee; (3) the secret information was disclosed by that employee and in breach of that confidence; (4) the secret information was acquired by a competitor with knowledge of the employee's breach of confidence; (5) the secret information was used by the competitor to the detriment of plaintiff; and (6) the plaintiff took precautions to maintain the secrecy of the trade secret.

*Accord Rohm & Haas Co. v. Adco Chemical Co.,* 689 F.2d 424, 429 (3d Cir. 1982) (in which the court, prior to the *Rycolene* decision, utilized the first five parts of the test, above, to decide a misappropriation of trade secrets claim under New Jersey law); *Thomas & Betts Corp. v. Richards Mfg. Co.*, 2007 U.S. Dist. LEXIS 31085 (D.N.J. 2007) (applying the six-part *Rycolene* test to decide a misappropriation of trade secrets claim under New Jersey law).[6]

Applying this standard, Telmark cannot establish the second, third, or fourth parts of the *Rycolene* test.[7] A plain reading of each of these prongs reveals that the disclosure of the secret in question must be to an "employee." The parties Agreement states, "this Agreement does not constitute a[n] . . . employment relationship." (Decl. of Sean F. Byrnes, Ex. A ("Contract") p. 4.) Therefore, because NBTY was not an employee of Telmark's, as a matter of law, Telmark cannot establish a prima facie case of misappropriation of a trade secret against NBTY.

---

[6] We note Telmark's citation to *Oswell v. Morgan Stanley Dean Witter & Co.*, 2007 U.S. Dist. LEXIS 44315, 2021 (D.N.J 2007), where a lower court utilized an abridged version of the six-part *Rycolene* test. (P's. Op. Br. at 42-43) However, we are constrained to use the six-part *Rycolene* test. *See Rohm & Haas Co. v. Adco Chemical Co.,* 689 F.2d 424, 429 (3d Cir. 1982).

[7] The parties dispute whether the information at issue here, namely, Telmark's pricing structure and the identity of its suppliers, constitutes "trade secrets" for purposes of the *Rycolene* test. Because Telmark fails the *Rycolene* test on other grounds, the Court need not address this question.

For the foregoing reasons, summary judgment is granted to NBTY on Telmark's misappropriation of a trade secret claim.

### G.     Count VI

Telmark alleges that NBTY engaged in unfair competition when it utilized its knowledge of Telmark's pricing structure and suppliers to undercut Telmark and form a separate agreement with Hartz.  (Compl. Count VI.)  By contrast, NBTY asserts that, under New Jersey law, its actions do not support an unfair competition claim with Telmark.

In New Jersey, unfair competition is both a statutory and a common law tort.  Statutory unfair competition is defined as follows:

> § 56:4-1. Appropriation of name, brand, trade-mark, reputation or goodwill of maker by dealer in product of maker:
>
> No merchant, firm or corporation shall appropriate for his or their own use a name, brand, trade-mark, reputation or goodwill of any maker in whose product such merchant, firm or corporation deals.

N.J. Stat. § 56:4-1.  The Court agrees with NBTY that Telmark cannot maintain an unfair competition claim in light of the strictures of this statute.  Telmark does not allege that NBTY has misappropriated its "name, brand, trade-mark, reputation or goodwill." *Id.*  Therefore, as a matter of law, Telmark cannot pursue this statutory claim against NBTY.

Turning to the common law tort of unfair competition, in New Jersey, this tort is primarily based upon agency theories.  The case that most clearly defines the parameters of this cause of action is *Lamorte Burns & Co. v. Walters*, 167 N.J. 285 (N.J. 2001).  In *Lamorte*, the New Jersey Supreme Court suggested that this tort exists primarily to ensure that parties to an agency relationship, specifically former employees, cannot misappropriate either "trade secrets"

or even less critical and more broadly defined "confidential information" that is the property of the employer. *Id.* at 298-300. The Plaintiff cites no case supporting the proposition that the common law tort of unfair competition can be sustained in New Jersey absent an agency relationship, and this Court's research reveals no such case.

Applying these principles here, Telmark's common law unfair competition claim fails. As established, the parties did not have an employment relationship. Further, the relationship between NBTY and Telmark cannot be described as that of agent/principal. The Contract states:

> 6. <u>Independent Contractor/Limit of Authority</u>
>
> The parties agree that Telmark shall be and is an independent contractor and shall have no authority to bind Nutro to contractual or other commitments or to enter into any contracts or make any commitments on behalf of Nutro. Telmark is in no way authorized or permitted to make any agreement, warranty or representation on behalf of Nutro or create any obligation, express or implied, on behalf of Nutro.

(Decl. of Sean F. Byrnes, Ex. A ("Contract") p. 4.) Thus, the Contract identifies Telmark as an independent contractor. While Telmark was obligated to represent NBTY at Hartz as a "sales agent," at no time did Telmark have the authority to make any representations or contracts on NBTY's behalf. In sum, Telmark and NBTY shared neither an employment nor an agency relationship. Because the establishment of such a relationship is a necessary component to maintaining the common law tort of unfair competition in New Jersey, Telmark cannot pursue this claim against NBTY.

For the foregoing reasons, summary judgment is granted to NBTY on the unfair competition claim under both the statutory and common law standards.

### III. CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part both parties'

motions: as to Count I of the Complaint, summary judgment is granted to Plaintiff Telmark Packaging Corp. on the issue of breach of contract, but denied to both parties on the issue of damages; as to Count II of the Complaint, summary judgment is denied to both parties; as to Counts III, IV, V and VI of the Complaint, summary judgment is granted to Defendant NBTY Manufacturing, LLC.  An appropriate form of Order accompanies this Opinion.

Dated: January 2, 2008

                     s/ Garrett E. Brown, Jr.  
                GARRETT E. BROWN, JR., U.S.D.J.